Good morning, Your Honor. May it please the Court, Michael Andrews here today representing the appellants, Paul Stoot and his parents, Paul and Tammy Stoot. Mr. Andrews, would you mind picking the mic up a little bit? There you go. My apologies. I would like to introduce the Court. Paul Stoot and Tammy Stoot, the parents of Paul, little Paul, are present here today. I would like to reserve five minutes for rebuttal purposes. Primarily the issues we have today concern the District Court judges' finding of qualified immunity and the dismissal of the appellants' Fourth and Fifth Amendment claims as well as their claim of outrage. The issue of the immunity, I think, really comes down to the way the Court looked at the Chavez decision. And as discussed in the brief, it seems to be primarily a focus on whether or not the actual introduction at trial of a coerced statement is necessary in order for there, first of all, to be a finding of a violation of a Fifth Amendment right. In this case, we had a 13-year-old young man who was developmentally disabled who was interrogated at length in a principal's office. State law made it very clear this was a custodial interrogation. And more importantly, we had a finding by the judge in the state court system that, in fact, there had been unlawful coercion used in procuring a confession from little Paul. With regards to the use of that in the Chavez issue, Chavez seems to contemplate that there be, at a minimum, a criminal proceeding. And I think that was Justice Thomas' words in order for there to be a requisite finding. The court in the district court case said, look, if it's not actually introduced, that's not going to happen. And because the state judge suppressed at a 3.5 suppression hearing the confession, that there can't be a cause of action. We would beg to differ. There is, I think, not only a violation that occurs when there is the institution of or the initiation of a criminal case. There was a proceeding filed in court. There was, Your Honor. With information. There was. They depended on the confession. They did, Your Honor, attached to the- As evidenced by the fact that they were dropped after the confession. That's correct, Your Honor. And, as a matter of fact, the affidavit of probable cause, which I think is Exhibit 2A in the record, clearly incorporates specifically the words that Detective Jensen attributed to Paul as a result of the coerced confession. So those were used as the basis for the filing of the information. And what was more is they were also used for a hearing for release on personal recognizance, essentially a bail-type hearing. Is that in the record? I believe it is, Your Honor. And then, also, they were used at the free-type hearing itself, where not only was the- I'm sorry. I'm sorry? That was the last one I didn't hear. It was also used, Your Honor, at the suppression hearing. That can't be pertinent. I mean, obviously, the fact that you're the one who triggered us being held at the suppression hearing, right, because you wanted to suppress it. So, obviously, it's going to be heard at the suppression hearing. That just can't be relevant. Well, Your Honor, I- If it weren't heard at the suppression hearing, you wouldn't have suppressed it. Well, I think, Your Honor, that, you know, in order for that case to move forward, there was a requirement for a suppression hearing, first of all, because of the nature of the charges. But also- What do you mean by that? You mean you always have to have a suppression hearing? Under Washington State rules, in a felony case, indeed, you do have to have a suppression hearing on any statements that are produced. So Little Paul had little choice in that matter. Is that right? You did not trigger it by filing a motion to suppress? Well, we did file a motion in memorandum explaining that. But, in fact, the court would have required a hearing on the suppression- Because they are the proponent of the statement. They have to prove it's voluntary. Exactly, Your Honor. And you filed something to explain why it wasn't. Exactly, Your Honor. But not only was that hearing mandatory, but also, at that hearing, Little Paul was actually cross-examined on his statements. So he had not only those statements used to initiate the action, where he then had an initial appearance in a hearing on release, but then also further proceedings to include suppression hearings. I don't remember the mention of the recognizance hearing in the briefs. And you don't have to do it now, but when you stand back up again, will you just give me a citation for the record? Yes, Your Honor. I think that the issue of the initiation of the criminal proceeding is vitally important. And one of those- But you don't have any case that says that. Well, Your Honor- Because you read Souter's concurring opinion. I mean, in Chavez, that seems to support what the White Justice Thomas- Well, Your Honor, the Hegazy v. Templeton case, which is at 505 F. 3rd, 161, is a Second Circuit case. It's a 2007 case. The Sordberger case does not say that. You know, I think that that does say it. There's also a couple other cases that are cited specifically in that category. But, I mean, in several of those cases, it was used at a preliminary hearing. I mean, here, I mean, obviously, if you've got a confession of sorts or a statement, it's going to be referred to in the affidavit supporting information. Well, it's going to be used. But I think that what is key is that not only was it used, but it's also reasonable for the officer to know that it's going to be relied upon by the prosecutor, as it was in this case. I mean, that was the whole reason the case moved forward. And the issue becomes- Well, the testimony used against him, well, if you say, anytime a criminal proceeding is initiated, any statement that the defendant made is going to be referred to. And I realize I'm making a broad statement, and there may be some exceptions. But generally, every time there's a criminal proceeding instituted by information, then the officer or whoever submits an affidavit saying, I interviewed the defendant, and he said this or that, or he gave us a confession or whatever. So it's always referred to then. Simply the initiation of the criminal case, in your view, then would trigger the Fifth Amendment. Well, Your Honor, I think that it would be possible, for instance, for an officer to file an affidavit of probable cause or the prosecutor to do so to support the information without making reference to an interrogation or statements- But have you ever seen that, where there's been an interrogation or an interview or a confession, and the officer didn't refer to it? I mean, it seems to me if the defendant has made a statement, I see it, you know, see the reference to it. You know, I think that is generally true, but I think that also proves the point. And again, if the court looks at the Hegazy case, Hegazy v. Templeton, you know, that's a clear finding that this has been initiated, and in this particular case it was used. In the Hegazy case, there wasn't even- The problem in Chavez is that it was never used. There was no criminal proceeding in Chavez. That's correct. And all they said was, at a minimum, there has to be an initiation of criminal proceedings. That's correct, Your Honor. But the district court took it further and said not only does it have to be an initiation of proceedings, but it actually has to be introduced. In other words, when we get to the next step in the process of determining whether or not qualified immunity exists, I mean, it shouldn't be a situation where the law requires that an officer, in order to be culpable or liable for violation of civil rights, not only has to have an actual violation in the sense of coercing a statement, but also has to go through a mental calculus and say, well, you know what, this is not going to be suppressed, and therefore it's going to be used, and that's what's going to produce the liability. The fact that he engages in that coercive behavior, that he takes a coerced statement, and he forwards it to the prosecutor, and that initiates the proceeding, that should be enough. And that is- What does the prosecutor do? Does the prosecutor issue information on his own account? What the prosecutor did in this case, Your Honor, was to essentially certify that he had received that information from the detective, from Detective Jensen. And that is, I think- Who's the affidavit on the affidavit? The affidavit is signed by, in this case, Deputy Prosecutor John Stansel, who is a prosecutor. Okay, does anybody pass upon that? Does the court look at that and say, having read the affidavit, I wish you a warrant for the arrest of the defendant, or is this just a file marker, or what is it? That is the basis. That is the legal authority or the factual pattern that gives the probable cause and the basis to charge the defendant, the prosecutor's recitation of why he's doing what he's doing. The reason I ask that, in Arizona practice, for example, there will be an affidavit in support of a complaint, and then a judge looks at it and then decides whether the probable cause is established or not, and then issues a warrant. And the same would apply in Washington. That is the minimum hurdle that the court relies upon to move forward. What I'm asking you is, does a judge look at the affidavit and say, hmm, there's a probable cause here, I will issue a warrant and allow the case to go forward, or does the prosecutor just say, these are the facts on which I have charged this case? The initial use of the affidavit is to support the information in the filing by the prosecutor. It's the prosecutor's recitation of his evidence. That's correct. No judge passes upon that one way or the other. It is possible in this particular case there was not a probable cause determination beyond accepting the affidavit at face value, and that was done at the hearing on personal recognizance. But there was no formal hearing where evidence was introduced and testimony was taken to either rebut or refute or to supplement the affidavit. Was he, Little Paul was arrested, I take it, after the information was filed? He was served a summons and information at the hearing. Who issued the summons? The summons would be issued by the prosecuting attorney through the clerk of court. Does anybody pass upon whether probable cause exists before issuing the summons? No, Your Honor, only the prosecutor at his discretion. Okay. Are you going to talk a little about the probable cause question? The probable cause? Yes. With respect to the probable cause issue in the Fourth Amendment detention, what we have here is we have a young 12-year-old, 13-year-old, developmentally disabled. We have an officer who essentially had very, very little in the way of investigation, very, very little in the way of evidence before he took that step of having Little Paul report to the principal's office, depriving him of access to his parents. But the officer has a statement of the little girl, correct? Well, Your Honor, the officer did have a statement of the little girl, but we have a 4-year-old child who the officer could not have reasonably believed to be reliable. And we have hearsay statements from the mother that the officer could not have reasonably believed to be reliable. And, in fact, in this case we have a full record from the state criminal proceedings where the judge finds that those hearsay statements are not reliable and goes further and finds that the 4-year-old, A.B., did not have the capacity to either accurately receive the information or to accurately relay it back in court and to testify. The 4-year-old purported to be talking about something that happened 18 months before when she was barely 3. That's correct, Your Honor. And to know that it happened five times 18 months before. It's incredible. An officer with the experience that Officer Jensen had should have realized something else was amiss. And if he had done even a basic level of investigation beyond simply talking to the mother in a very brief discussion with the child, he would have realized that. And the record is replete, and we've tried to attach all the pertinent records from state court, to show that there were a number of circumstances that basically said this is not something that he should rely upon, it's not reasonable for him to rely upon for probable cause. This child had a history of making other allegations of abuse. There were medical records that were out there that indicated that she had vaginal infections from other sources. There was history that showed that the mother had perjured herself in court. There was history to show that the mother had a clear motive for financial gain. None of those things were looked at by Detective Jensen. And Detective Jensen ignored the fact that this child could not reasonably have recalled accurately events from 18 months prior at the age of 4 years old, talking about when she was 2 1⁄2. And that she said all sorts of contradictory things when he did talk to her. That's correct, Your Honor. And that she talked about another person and he told her to stop talking about it. That's correct. You know, and later on, after he talked, after he interrogated little Paul, the state submits the child to a forensic interviewer. Later on, the state submits the child to a forensic medical evaluator. But none of those steps were taken prior to Detective Jensen making, to say, okay, now I'm going to go ahead and custodially interrogate a 13-year-old without access to his parents and go further beyond that and actually coerce a statement impermissibly under state court rules. You mentioned at the beginning you wanted to reserve some time. You've got two minutes left or so. Thank you, Your Honor. The district court seemed to focus on whether or not Detective Jensen could have reasonably known that the law was clearly decided and that these acts were illegal. I would submit to the court that it was very clear, in its most basic sense, that the officer had to have known, had to have known, that taking a 13-year-old and coercively interrogating him for two hours, making impermissible threats and promises, would be violative of the Fifth Amendment right. And the court need not and should not look to see whether or not the officer also had some prognosticative powers to foresee whether or not a judge ultimately would suppress or not suppress that. He knew that once he passed that information to the prosecutor, the prosecutor was going to rely upon that in the affidavit of probable cause, and the natural consequence of that was going to be the initiation of felony charges against little Paul. Similarly, with regards to the probable cause issue, the issue, I think, is clear, and one more case that I wanted to provide to the court was Cortez v. McCauley, 478 F. 3rd, 1108, a 2007 case, but it's quite, I think, persuasive in talking about the state of the law with regards to the probable cause issues. There's a great discussion in there of other cases, including Easton v. City of Boulder, U.S. v. Shaw, where it talks about the fact that an officer can't take, for instance, I think it was in the Easton v. City of Boulder case, there's a 5-year-old and there's a 3-year-old and their statements corroborate each other, and that gives the probable cause. We didn't have that here in the Stute case. We had this unreliable 4-year-old without any external corroboration, but yet he took, Detective Jensen took that as being enough for probable cause to move forward. Similarly, in the Shaw case, it talks about whether or not mother's hearsay statement alleging abuse from the child, and I think I'm using up my minutes here. Thank you. Thank you very much. Good morning. Bob Christie on behalf of the respondents in this case. Speaking to the Fifth Amendment claim, the Chavez case certainly is instructional here, and Judge Zilley found it to be significant. There's one other decision that wasn't discussed in the materials and I just want to bring to the Court's attention. It's a United States Supreme Court case of U.S. v. Samuel Patane, P-A-T-A-N-E, and that's at 542 U.S. 630. It's a December, excuse me, a June 2004 decision. What the Court says in that decision that is significant here, it's not a civil rights case, but it does discuss, and this is at page, I think it's the Supreme Court page number is 2629. It does make the point there that the right against self-incrimination is fundamentally, and it says it is a fundamental trial right, and I think that's the point. Clearly, there was an initiation of criminal proceedings, and as counsel stated, Your Honor, Judge Silverman, there was no review of the information and a probable cause determination in order to initiate criminal proceedings. Was it in fact used in a personal consciousness hearing? And I understand that that is correct, and I was trying to find a citation or reference to that in the record because I don't remember that coming up at all in the Court below. Do you believe it to be true, then? I can't contradict counsel's statement on if he believes it's in the record. I guess we'll have to find it. I tried to find it. Let's say hypothetically because none of us seem to know. So suppose it were true that there were a personal consciousness hearing, and the judge said, well, how do you know, what's your basis for concluding that he should be held over, and they say he shouldn't be released in personal consciousness. They say, well, because he confessed to this. Could he challenge at that point on self-incrimination grounds and say, well, you shouldn't rely on that? I'm not a criminal procedure or a criminal lawyer, and I honestly don't know the answer to that criminal procedure question, and I don't know what's in this record on that point as to whether or not it came up. What I would say, and I think Judge Zille is correct in his analysis, that this is the right against self-incrimination is fundamentally a trial right, and that's a trial where the statements are being used against you, where you're facing the prospect of having a finding against you on criminal charges. What about a preliminary hearing? Would that count? I don't believe that it triggers the right. There is case law saying it does. There is case law saying it does. That's correct. There's not case law in this circuit that says that. What about grand jury? I think the case law is that that is not a sufficient use of the evidence to trigger the right against self-incrimination, and I think, and again, this recent Supreme Court case is consistent with the way Judge Zille read Chavez is that it's ultimately a trial right. Clearly here, the use of it at a 3.5 hearing or the use of it in filing an information, as you know, Your Honor, that is going to always be part of what information is filed because it's part of the statement of probable cause. The use of it at a 3.5 hearing, which procedurally is to determine whether or not the evidence is going to be admissible, certainly isn't the type of use of it to trigger the right against self-incrimination. But I do want to comment on this. The notion that this was a coercive interrogation, that's not established at all in this record. We're not up to that. I mean, we're not up to that. Certainly you get a remand on that question. What's the difference? There's a lot of discussion in the materials, both on that point and with respect to the minor child, A.B., about what was found at subsequent criminal procedure where there was testimony presented by multiple experts. Of course, none of this is information available to the officer, and the straw man has been set up here that the officer needs to procure medical records of a victim of child sex abuse where the mother has related to two different officers that she received information from her daughter and it seemed credible that they should have gotten medical records, had her undergo mental testing. There's nothing about the information that was presented to the officer that suggested that A.B. was not credible in her description of events. Why wouldn't her age, coupled with how much time has passed, put a reasonable police officer on notice that you better make sure that there's more to it than just what she says? Well, and I think those are certainly factors that an officer should look to, and here there was additional information. Granted, it's hearsay information, but it's part of... It's not information. The information was just the same story told to her mother. Well, but it was repeated in a way and repeated from the mother to the officers in a way that would suggest there was some indicia of credibility. I mean, that's part of information gathering that always occurs in these minor cases. Because it was the same story twice? Pardon? What was the indicia of reliability? It was the same story twice? Well, it was the same story twice, but it's told again in a way to... These are minor victims of child sex abuse. These are very difficult cases to interrogate. Judge Zille made the point, and it's very clear in this record, this is a highly trained officer that is skilled at doing exactly this kind of interrogation, and he developed the information in a way that to him gave him indicia of reliability. That was coupled with her having repeated these statements or initiated these statements to her mother in a way which the officers, when asking the mother about how they came out, what was said, enhanced that feeling of reliability with respect to the statements. There was one additional new case that we cited to the court that relates to this specific issue of probable cause, and I just want to bring it to the court's attention. It's the case of John v. City of El Monte. It was decided after the decision here was filed on September 26, 2007. It's at 505 F3rd 907. That was a case of an arrest of a teacher based exclusively on the statements by, in that case it was an older victim, it was, I think, a 12- or 13-year-old victim. That's a huge difference. I'm not questioning that that is a huge difference. I'm just citing it to the court. Maybe if you have children, to think that a 4-year-old was telling you something about something that happened 5 times 18 months before when she was barely 3, it just seems to me to be inherently something that has to be corroborated somewhat before you go forward on it. Well, you know, I actually reflected on that because I have three children, and my current youngest at that age would have given that level of detail, and I wouldn't have questioned it at all. So I guess it's dependent upon the circumstances. As of yesterday, maybe, but if that's something that happened 18 months before, that's what really makes me stumped. But what's the timing of the statement to the mother? In other words, is it contemporaneous with the events happening, or is it something later? It's contemporaneous with when it's reported to the department. So, yeah, it is the same time frame. In the interest of time, I want to speak briefly to the issue of qualified immunity as it relates to this Fifth Amendment issue because clearly we're sitting here discussing what is the state of the law, are the contours of it clearly defined as it relates to this, and obviously they are not. It's not well settled, and you cannot ask. Well settled is that she can rely on the victim unless there's a reason not to, essentially. I think that's correct, but clearly in terms of what I'm speaking about specifically is the Chavez issue about whether or not the self-incrimination is triggered by some pretrial procedure. That certainly isn't well settled, and the real question is what question do we ask in that instance about the ‑‑ and it's a hard problem, I think. Do you ask that question, i.e., did the policeman know that it was ‑‑ since the policeman wasn't responsible for the introducing of it anyway, and you really haven't raised that question at this point, the sort of causation connection question, although maybe you will down the line, but so far you haven't. So the only thing the police officers are responsible for is the behavior itself with regard to the coercion, and why don't we just look at that? Well, and I think that under the Devereux case and the Cunningham case, both of which we've talked about, it becomes a 14th Amendment issue. I don't believe it is a 5th Amendment issue. I think it's properly analyzed under the 14th Amendment. But that's a different question. You were just raising ‑‑ I understood what you were saying now. You're saying even if we were to think that there was a ‑‑ that the introduction, that the use in the information and in the recognizance hearing, if, in fact, there was one, and, in fact, it was used, were sufficient for Chavez's purposes, still there should be qualified immunity. That's what you started with. That's correct. And I say, well, you're certainly right if the standard is, if we're looking at the Chavez question, because that is an undecided question and there's conflicts in the circuits and there's no case just like it, and you're right. But the question is, is that what we look at? Or do we look at what the police did, i.e., was this, in fact, a coerced confession? Well, I guess on that point, Your Honor, then I think that you can also look at whether or not that is an issue that's more properly framed under the 14th Amendment. And that's why I was segwaying into the presentation. Why would you do that? Well, the claim of a coerced interrogation is one of the issues that they have raised, and they have framed as a 14th Amendment claim. But suppose we agree that it wasn't, whatever happened here wasn't bad enough to be a 14th Amendment violation. Let's go back to the Fifth Amendment. Okay. How do we do the qualified immunity under the Fifth Amendment? Well, the qualified immunity under the Fifth Amendment relates to whether or not a reasonable officer in the position of our officer, Officer Jensen, given the parameters and the state of the law at that time, as we can survey it, would have known that the possible use of this confession at some preliminary stage in the proceedings was going to amount to a right or a violation of the Fifth Amendment. And as I said once again, I agree with you if that's the question. The answer is that he's entitled to qualified immunity. But I'm not sure that's the question, and that's what I'm trying to get at. Well, and I guess I suggest that is the question. Okay. Why? That's what I want to know. Well, why is that the question? Because their allegation of a Fifth Amendment violation, they have to start by proving under the first prong associate that that right has been violated. And the very specific right that they are talking about is the right against self-incrimination, and they're relating that specifically to his confession. So it is the use of that confession, and whether it is used in a proceeding that invokes that right, that is ultimately the issue on the first prong. So if you don't get past the first prong, you don't get to the second prong. But if we get there, then the question is whether or not the parameters of the law surrounding the use of this statement were so clear that the officer should know that the use of this statement at some preliminary proceeding is going to trigger the Fifth Amendment right in a way that might suggest that it was violated. I mean, that's how I would analyze the two steps of Saussure and the qualified immunity on that issue. The other claims that they've asserted, obviously, are the Fourteenth Amendment claim, and we've cited the cases, including the recent Ninth Circuit cases in Cunningham and Devereux, that speak to that issue. There is no right to be interviewed in a particular method. Judge Zille was satisfied about the level of training that this particular officer had in conducting this type of investigation. There is not evidence to demonstrate the standard of conscience. Shocking, which is necessary to overcome that. The outrage claim, frankly, is a claim under state law. The elements of the outrage claim, I suggest, are more extreme than what would be required to establish a Fourteenth Amendment claim under the shock to conscience standard, and that clearly is not met by this evidence. To sum up, we believe that Judge Zille correctly analyzed each of the claims, the primary ones remaining in this case being the Fifth, the Fourteenth Amendment claims and the state law claim of outrage, properly found that those rights were not violated, that in any event a reasonable officer in Jensen's position would not have known that his conduct was unconstitutional, is entitled to qualified immunity, and I'll yield the balance of my time. Unless the Court has questions. Thank you, Mr. Christie. Thank you. Mr. Andrews, you've got about 20 seconds left. We'll give you a minute if you could keep it to a minute, please. Thank you, Your Honor. I did look to try to find the citation to the personal recognizance hearing. I was able to find in my own outline that the order on personal recognizance was entered on the 23rd of July, 2004, by the Snohomish County Superior Court, but I wasn't able to find my citation in the materials submitted in the brief on the summary judgment motion. I apologize for that. Send it to us by mail. We'll give you the copy. Yes, Your Honor. And it would be helpful to know not only that the personal recognizance hearing happened, but that the confession was used. Understood. And I will do my best to supplement that and provide that to the Court and Counsel. I do want to just briefly address, with the few seconds I have left, this issue of how it's framed in terms of whether or not it's the Chavez question. And it sounds to me that really what the city wants is kind of a pre-hearing on the issue of causation. And, again, it's the whole issue of putting the cart before the horse. We don't have to know that the officer reasonably knew that whether or not a judge would suppress the statement. Look, there is, in fact, another issue here, which has been discussed in some of the cases, and that is what is the officer responsible for here and what's the prosecutor responsible for. But I don't understand that issue to be before us at this point. No one's raised that question here up to now. I think that's probably true. I think it's probably the next step to be determined whether or not it's a natural consequence of whether or not there's a legal intervening cause. But I think that we can decide the issue, and the issue should be decided, that his violation, for purposes of determining whether or not there was a violation, is complete when he coerces a statement and then forwards that to the prosecutor. And, in fact, there is a criminal case initiated against the defendant. Because you would simply look, for qualified immunity purposes, at the events that the police undertook, i.e., coerced or didn't coerce the shot. Not exactly, Your Honor. I mean, if there was coercion and then nothing happened afterwards, there was no case. Well, then there wouldn't be a cause of action, but that's not the answer to the question. There wouldn't be a cause of action under the Fifth Amendment. We know that. But for qualified immunity purposes, you're trying to get at issues having to do with what the person who you're trying to sue did or didn't do and would have been deterred from doing if you held them liable. Well, I think a reasonable officer should know that once he forwards that statement, that confession to the prosecutor, that there's likely to be follow-on consequences. Thank you. The case was argued and submitted. Thank you, gentlemen. Good morning.
judges: Silverman, Berzon, Mahan